Mr. Justice Scott delivered the opinion of the Court. This was an action upon a foreign judgment. (Mahurin vs. Bickford, 6 New Hamp. R. 567, and the cases there cited. Scott vs. Cleveland, 3 Mon. 62.) The transcript was read in evidence without objection. The statute of limitation was the sole ground upon which the defence was rested, and it was admitted upon the record that the plaintiff below was then and had always been a non-resident of the State of Arkansas., The judgment was rendered in the State of Ohio the 30th June, 1842, and this cause was commenced before a justice of the peace in Arkansas the 25th May, 1849. As the plaintiff below was ever a non-resident of this State, the statute did not commence to run against him until the 14th January, 1843, (Watson vs. Higgins, 2 Eng. R. 488. Carnead vs. Thompson & Hanly, 4 Eng. 55. Calvert vs. Lowell, ante,) under the provisions of the act approved that day, which took from non-residents their exemption from the operation of the statute of limitations and thereby placed them upon the same footing with residents. Before any bar had grown up, the act of the 14th December, 1844, repealed the last named act, but, at the same time, re-enacted its provisions, coupled with a privilege to non-residents to sue within the then next two years. The plaintiff, not having availed himself of this privilege, his non-residence can avail him nothing, except only to fix the 14th January, 1843, as the point of time from which the statute commenced to run against him. From that time until the commencement of this suit, nearly six years and a half had elapsed, a period greater than was necessary to perfect a bar to an action on any foreign judgment — five years having been held sufficient for such purpose in Baldwin vs. Cross, (5 Ark. 510.) That case, as to this point, has been by this Court several times alluded to with seeming approbation, (Dickerson vs. Morrison, 1 Eng. 266. Lucas vs. Tunstall, ib. 445); but, as its authority has been assailed by the learned counsel for the plaintiff, we have looked to the ground ■upon which it rests, and see no good reason to overrule it. There is certainly no such inconsistency between statutes oí limitation and the common law doctrine of presumption of payment, as to make them incongruous, when applicable at the same time to the same cause of action. On the contrary, the courts both of England and the United States seem always to have regarded them as in no respect incompatible. True, there are strong points of resemblance, and perhaps the doctrine of presumption of payment was evolved from the common law after the wisdom of the legislature had provided statutes of limitations as a means to avert the evils to society of enforcing stale demands, and may have been suggested by this legislation, as it seems to be referred to the times of Lord Hale, some forty years after the enactment of the first matured and comprehensive statute of limitations passed in the 21st year of James I. Those statutes previous to this one, having been sometimes temporary, were always contracted as to their field of operation and extremely crude; and they generally run back to some remarkable fixed period, such as, the last return of King John from Ireland, or to the first coronation of Richard I, whereby the period increased every day; and, in the language of Lord Coke, “ Many suits, troubles and inconveniences did arise, and therefore a more direct and commodious course was taken, which was to endure forever, and calculated so to impose diligence on, and vigilance in, him that was to bring his action, so that by one constant law certain limitations might serve both for the time present and for all time to come.” But, in other points, clear and well defined distinctions have been long and well settled. For instance, while one must be specially pleaded, the other is available under a general plea of payment. So, while one is a peremptory bar — a positive conclusion of law — cutting its way, whether consonant with the right and justice of the particular case or not, the other is a mere rule of evidence operating effectively only where the true merits of the case are not to the contrary shown. The common law presumption of payment being always liable to be repelled by any evidence of the situation of the parties or other circumstances tending to satisfy the jury that the debt is still due. 1 Greenl. Ev., p. 45, sec. 39. Nor did the provisions of our statute (sec. 30, 31, Rev. Stat., p. 531, since repealed) reducing the period for a conclusive presumption from twenty to ten years, and providing that such presumption should only be repelled by proof of part payment or a written acknowledgment within the ten years, transmute this doctrine into technical limitation: on the contrary, these were but statutory regulations of the common law doctrine, not designed to alter its nature. Then these provisions in no way militated against the conclusions of the Court in Baldwin vs. Cross, that five years under the 11th sec. of the original act was the bar to an action on a foreign judgment. And the fact that judgments and decrees were in express terms, excepted from the 6tk section of the act put in force the 20th March, 1839, strongly supports that conclusion. Finding no error in the record, the judgment of the Court below must be affirmed with costs.